## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| KYRA BERNHARDT, *in her individual capacity and as personal representative of the Estate of Gene Bernhardt*,<br><br>    Plaintiff,<br><br> vs.<br><br>COUNTY OF HAWAII, *et al.*,<br><br>    Defendants. | Case No. 19-cv-00209-DKW-KJM<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## **INTRODUCTION**

Plaintiff Kyra Bernhardt (Plaintiff) brings claims on behalf of her deceased husband, Gene Bernhardt (Bernhardt), arising out of Bernhardt's death during an encounter with police officers from the County of Hawai‘i in April 2017.   More specifically, Plaintiff claims that, during the encounter, Officer Stanley Kaina used unnecessary and excessive force, which was the product of the County's failure to properly train its officers.

The undisputed facts in this case, however, demonstrate that Kaina acted reasonably under the circumstances, particularly when Bernhardt confronted officers with a loaded hunting crossbow following a profanity-laced tirade during which Bernhardt threatened officers with physical harm.   The same undisputed facts illustrate why none of Plaintiff's claims can withstand scrutiny.   Therefore, as

more fully explained below, Defendants' motion for summary judgment, Dkt. No. 125, is GRANTED.

## **RELEVANT PROCEDURAL BACKGROUND**

Plaintiff filed her Complaint against Defendants County and Kaina on April 24, 2019, raising ten claims.   Dkt. No. 1.   In September 2019, the Court granted in part and denied in part Defendants' Motion to Dismiss Claims 5 through 10, dismissing only Claims 6, 7, 8 and 10 for failure to provide timely statutory notice of the same to Defendants.   Dkt. No. 26.

On March 18, 2021, Defendants filed the instant Motion for Summary Judgment with respect to all remaining claims.   Dkt. Nos. 125-126.   On March 31, 2021, prior to the filing of Plaintiff's response to the Motion for Summary Judgment, the parties filed a joint Stipulation for Dismissal of certain claims.   Dkt. No. 130.   Specifically, pursuant to the Stipulation, the parties agreed to dismiss Claim 1 to the extent it was based upon a Fifth Amendment violation or the Hawaiʻi State Constitution and Claim 3 to the extent it was premised upon a practice, custom, policy, or procedure.   As a result, the parties agreed that the following claims remained for purposes of the motion for summary judgment: Claim 1 to the extent it is based upon the Fourth and Fourteenth Amendments; Claim 2 to the extent it is based upon the Fourteenth Amendment; Claim 3 to the extent it is premised upon inadequate police training; and Claims 4, 5, and 9.

Thereafter, Plaintiff filed her opposition to the motion for summary judgment, Dkt. Nos. 134-135, and Defendants filed their reply, Dkt. Nos. 137-139.   This Order now follows.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   In assessing a motion for summary judgment, however, all facts are construed in the light most favorable to the non-moving party.   *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## FACTUAL BACKGROUND

On April 27, 2017, Andrew Brooks flew from Honolulu to the island of Hawaiʻi to spend time on his property on Papaaloa Road, Papaaloa.   Decl. of Andrew Brooks at ¶¶ 2-3, Dkt. No. 126-16.   At the time, Bernhardt and Brooks were neighbors in Papaaloa, sharing a property line on which a large eucalyptus tree sat.   *Id*. at ¶ 4.   Upon Brooks' arrival at his Papaaloa property, he noticed "a lot of debris piled up" around the eucalyptus tree.   *Id*. at ¶ 5.   The next day, Brooks

noticed more debris piled up around the same tree. *Id*. at ¶ 6. Bernhardt told Brooks that he was "honoring the tree" and, "if [Brooks] came up there, he would 'put [Brooks] in the ground with the ancestors.'" Bernhardt also told Brooks that Brooks' driveway was on Bernhardt's property. *Id*. Later that same day, Brooks noticed that "some type of string or heavy fishing line" had been strung across his driveway. *Id*. at ¶ 7.

On April 29, 2017, Brooks noticed more "junk" by the eucalyptus tree. *Id*. at ¶ 8. Upon returning to his property in the afternoon, Brooks' driveway was blocked by a propane tank. There was also "more junk" by the tree, a line drawn across his driveway, and Bernhardt using a blowtorch in the middle of Papaaloa Road. *Id*. Brooks turned around and called the police. *Id*. at ¶ 9.

Prior to Brooks calling the police, Plaintiff had also called them, asking to speak to Lieutenant Jefferson Grantz. Decl. of Lieutenant Jefferson Grantz at ¶¶ 4-5, Dkt. No. 126-32. During this conversation, Plaintiff informed Grantz that the oil line for Bernhardt's tractor had been cut and that act had "triggered some of [Bernhardt's] trauma and he's already like not had sleep for like a month and so he's trying to hunker down protecting his tractor...." Transcript of First Telephone Call Between Grantz and Plaintiff at 1, Dkt. No. 126-22. Plaintiff asked Grantz if he could provide an update, as she was on a trip in Oregon. *Id*. Among other things, Grantz asked Plaintiff if medical assistance should be sent to help Bernhardt, to

4

which Plaintiff responded "no" on multiple occasions.   *Id*. at 4.   Shortly after this

call, Plaintiff again called Grantz.   Grantz Decl. at ¶ 10.   Plaintiff told Grantz that

she had "just" received a text message from Bernhardt saying, "call the police

911…."   Transcript of Second Telephone Call Between Grantz and Plaintiff at 1,

Dkt. No. 126-23.   Plaintiff asked Grantz if it was "at all possible for you to go up

there?"   Grantz responded that the police had just received a call from a neighbor,

Brooks, saying that Bernhardt had blocked his driveway.   Grantz agreed to head to

Bernhardt's property.   *Id*.

Prior to the police reaching Bernhardt's property, at approximately 3:00 p.m.

on April 29, 2017, various individuals drove in two vehicles up Papaaloa Road.

Decl. of Carleen Ignacio at ¶¶ 2-3, Dkt. No. 126-17.[1]   The road was blocked by

"debris," including a 2x4 piece of wood and piles of asphalt.   *Id*. at ¶ 4; Decl. of

Colton Lindsey at ¶ 3, Dkt. No. 128-18.   One of the individuals, Aasyn Datuin

(Datuin), asked Bernhardt to move the debris, to which Bernhardt responded that he

was "gonna kill [Datuin]" and that Bernhardt owned the road.   Decl. of Aasyn

Datuin at ¶ 5, Dkt. No. 126-19.   Bernhardt also asked whether Datuin was "'the one

who tried to run [Bernhardt] off the road the other day and tried to kill me.'"   *Id*.

---

[1]In her opposition statement of facts, Dkt. No. 134, Plaintiff appears to dispute all of the facts related to the individuals driving up Papaaloa Road with the following: "these people are the delinquents who had run [Bernhardt] off the road and threatened him with a gun."   *Id*. at 1. Obviously, that assertion does not properly dispute any of the relevant factual statements concerning the individuals' interaction with Bernhardt.   The Court, therefore, does not consider any of the same as disputed.

Datuin had no idea what Bernhardt was talking about because he had never seen Bernhardt before.   *Id*. at ¶ 6.   During this time, one of Datuin's friends exited the second vehicle, and Bernhardt told the friend that he "'better get back in his car or you boys gonna get hurt.'"   *Id*. at ¶ 5.   At some point, both vehicles were able to get around the debris in the road.   *Id*. at 7; Ignacio Decl. at ¶¶ 5, 10.   After driving further up the road, the individuals got out of their vehicles to discuss the incident. *Id*. at ¶ 11.   The group noticed that Bernhardt was standing in the road, pointing "what looked like" a rifle with a scope at them.   *Id*.; Datuin Decl. at ¶ 7.   The group immediately left the area.   *Id*. at ¶ 8.

After Plaintiff's second call with Grantz and the receipt of Brooks' telephone complaint, Grantz and two other officers, Kaina and Officer James Pacheco (Pacheco), left for Bernhardt's property in separate vehicles.   Grantz Decl. at ¶¶ 12-13.   On the way, Kaina encountered Datuin and Ignacio.    Decl. of Stanley Kaina at ¶¶ 4-5, Dkt. No. 126-31.   Ignacio told Kaina that "a crazy man" was blocking the road and that he "might have a rifle…."   Ignacio told Kaina to "'please be careful.'"   *Id*.

After leaving the police station, Grantz started an audio recording, which is part of the record in both CD and transcript form.   Grantz Decl. at ¶ 13; *see also* Exh. I (CD); Dkt. No. 126-24 (transcript).   Upon arriving at Bernhardt's residence,

Grantz noticed a lot of objects on Papaaloa Road and Brooks' driveway blocked by a propane tank and other items.   Grantz Decl. at ¶ 14.

After talking with Brooks, Grantz went to speak with Bernhardt.   *Id*. at ¶ 15. A truck was in Bernhardt's driveway with the tailgate facing Papaaloa Road and Bernhardt sitting on the tailgate.   *Id*. at ¶ 17.   Grantz spoke to Bernhardt from the road, with Kaina behind and to the right of Grantz and Pacheco behind and to his left.   *Id*.   During the conversation with Bernhardt, Grantz spoke calmly and politely.   *Id*.; *see generally* Exh. I.[2]   Bernhardt was quite the opposite.   Grantz Decl. at ¶ 18; *see generally* Exh. I.   At various times, Bernhardt, while yelling and swearing at Grantz, asserted that he had the right to block the publicly owned Papaaloa Road.   Transcript of Grantz Audio Recording at 4-5, Dkt. No. 126-24; Exh. I.   Grantz, meanwhile, alternatively asked Bernhardt to move the objects Bernhardt had placed on the road and/or for permission for the officers to move them.   Tr. of Grantz Audio Recording at 4-7; Exh. I.   Among other things, Bernhardt answered, "I don't give a fuck what your excuse is[,]" "you leave it the fuck alone[,]" "You go ahead and take it down then and I'll have your ass in jail[,]" and "Why don't you just get the fuck out of here."   Tr. of Grantz Audio Recording at 4-7; Exh. I.

---

[2]The conversation begins at approximately 8 minutes and 30 seconds into the audio recording.

Almost six minutes into their conversation, Bernhardt stated that he was

"gonna feed my animals so. When I come back and that's gone, whatever."   Tr. of

Grantz Audio Recording at 7; Exh. I.   The following exchange then took place:

> Grantz:        We're gonna, we'll just gonna have to take it off now.
>
> Bernhardt:   I'm gonna tell you, I'm gonna be the one putting your ass behind bars boy. And I'm not just talking you two too because you all know better. That's my personal property. I have permission from the County to put it there.
>
> Grantz:        Well, we'll…
>
> Bernhardt:   I have a reflector on it, I have that sparkly dust all over it. My tractors been sitting there broke down.
>
> Grantz:        How's it going?
>
> Bernhardt:   And it would've been gone a long time ago.
>
> Grantz:        How's it going though is it…
>
> Bernhardt:   It's not your fucking business. I keep finding more shit they did, yeah.
>
> Grantz:        Well what did…
>
> Bernhardt:   When I have time…
>
> Grantz:        Why don't you just relax dude. Well, we're here to help you. Just move this stuff off.

Tr. of Grantz Audio Recording at 7-8; Exh. I.

Around this time, Bernhardt got off the tailgate of the truck in his driveway

and walked to the front of the truck.   Grantz Decl. at ¶ 20.   When Bernhardt went

to the front of the truck, Kaina unsnapped the safety restraints on his handgun holster, but did not draw his weapon, because Kaina could not see Bernhardt's hands and did not know if he was going for a weapon.   Kaina Decl. at ¶ 10.[3]   Bernhardt subsequently walked back to the tailgate of the truck.   Grantz Decl. at ¶ 20.

Then, at approximately 15 minutes and 24 seconds into the audio recording, Bernhardt yelled: "Hey, hey listen to me if you don't know where the property line is. If you haven't personally seen it, I'm telling you, you're in danger right there where you're standing."   Tr. of Grantz Audio Recording at 8; Exh. I.   At this time, Grantz was on Papaaloa Road and asked, "What do you mean?"   Grantz Decl. at ¶ 20; Tr. of Grantz Audio Recording at 8.   Approximately 15 minutes and 34 seconds into the audio recording, Bernhardt then yelled: "What do I mean? I mean I know where the fucking property line is and you're on my fucking property."   Tr. of Grantz Audio Recording at 8; Exh. I.   As Bernhardt said this, he was also walking quickly towards the direction of Grantz and a trash can.   Grantz Decl. at ¶ 21.   A crossbow and iPad sat on top of the trash can.   Opposition Statement of Facts at 2,

---

[3]In her opposition statement of facts, Plaintiff appears to assert that Kaina unsnapped his holster at some "well earlier" point.   *Compare* Dkt. No. 134 at 1, *with* Dkt. No. 126 at ¶ 55.   Plaintiff, however, cites no evidence for this assertion.   *See* Dkt. No. 134 at 1.   Later in her opposition, Plaintiff again asserts that Kaina unsnapped his holster "well before" Bernhardt moved from the tailgate.   Dkt. No. 134 at 3.   The evidence cited, however, establishes no timeline for when Kaina unsnapped his holster.   Finally, later still in her opposition, Plaintiff goes so far as to contend that Kaina had his weapon "drawn and in firing position well before" Bernhardt moved, relying on an opinion by Dr. Kris Sperry.   *Id*. at 5.   In his deposition, though, Dr. Sperry declined to stand by that opinion.   Depo. of Dr. Kris Lee Sperry at 55:7-20, Dkt. No. 139-3.   Therefore, Kaina's statements in this regard have not been properly disputed.

Dkt. No. 134; Reply Statement of Facts at ¶ 77, Dkt. No. 139.   Bernhardt picked up the crossbow with his right hand and the iPad with his left hand.   Grantz Decl. at ¶ 21; 4/29/17 Use of Force Memo by Stanley Kaina at 2, Dkt. No. 134-10.

Bernhardt then made a "quick turn" towards Grantz, pointing the crossbow at him.   *Id.*; Grantz Decl. at ¶ 21; Kaina Decl. at ¶ 13.[4]   Bernhardt did not turn towards his home.   Grantz Decl. at ¶ 21; Kaina Decl. at ¶ 13.[5]   The crossbow was armed with a razor tip hunting arrow that can kill a human and/or cut arteries and major organs.   Grantz Decl. at ¶ 21; Kaina Decl. at ¶ 9; Decl. of Paul Trpkovski at ¶ 15, Dkt. No. 126-29.   Grantz thought that he was going to be shot and killed

---

[4]In her opposition statement of facts, although Plaintiff appears to dispute (on multiple occasions) the officers' statements that Bernhardt pointed the crossbow at Grantz, Dkt. No. 134 at 1-3, none of the evidence she cites supports such a contradiction.   Notably, even the report of Dr. Kris Sperry, Plaintiff's expert, acknowledges that Bernhardt's rotation would have resulted in him facing Grantz (as well as Kaina), while failing to contradict Grantz's and Kaina's testimony that the crossbow was leveled at Grantz.   *See* 4/22/19 Report of Dr. Kris Sperry at 7, Dkt. No. 134-23. Further, contrary to Plaintiff's contention, in his Use of Force Memo, Kaina stated that Bernhardt *pointed* the crossbow at Grantz−*not* simply that Bernhardt *turned* toward him.   4/29/17 Use of Force Memo at 2.   In any event, the two assertions−pointing something at a person and turning toward them−are not inconsistent.

[5]In her opposition statement of facts, Plaintiff asserts that Bernhardt was heading home or "leaving" when he picked up the crossbow and iPad.   Dkt. No. 134 at 3, 5.   This belief is based upon an opinion in Dr. Sperry's report and Bernhardt's statement, earlier in the conversation with Grantz, that he was going to feed his animals.   *Id.*   First, Dr. Sperry's opinion about Bernhardt's intentions when he picked up the crossbow and iPad has nothing to do with Sperry's expertise in forensic pathology or "the effects that bullets and other projectiles have upon the human body." *See* 4/22/19 Report of Dr. Kris Sperry at 1.   Sperry, in other words, is in no position to opine about Bernhardt's intentions.   Second, while Bernhardt did utter the words "gonna feed my animals[,]" Plaintiff completely ignores when that statement was made and what took place after it.   Notably, Bernhardt made the statement more than a minute *before* he subsequently told Grantz that he was "in danger" for being on or near Bernhardt's property line.   *See* Exh. I.   Thus, the fact that Bernhardt may, at one time, have intended to feed his animals, is entirely irrelevant as to whether, when he picked up the crossbow and iPad, he still intended to do so.   Third, Bernhardt's decision to pickup the crossbow and iPad belies any claim to him heading off to feed his animals.   Neither item, as far as the Court is aware, has any relationship to such feeding.

because Bernhardt was agitated, aggressive, told Grantz that he was in danger, and pointed a loaded crossbow at him.   Grantz Decl. at ¶ 22.[6]   Grantz put his left arm out and stepped back while trying to unholster his weapon, but he did not have time to do so.   *Id.*   Instead, within a second of Bernhardt saying, "you're on my fucking property[,]" Grantz shouted, "Hey, hey, hey."   *Id.*; Tr. of Grantz Audio Recording at 8; Exh. I.   Two seconds after Bernhardt said "fucking property[,]" Kaina fired three shots at him without warning.[7]   Exh. I; Kaina Decl. at ¶ 13; *see generally* Tr. of Grantz Audio Recording.

Although CPR was started on Bernhardt, he died from the gunshot wounds. Grantz Decl. at ¶ 23; Decl. of James Pacheco at ¶ 6, Dkt. No. 126-6; 8/25/17 Autopsy Report at 2, Dkt. No. 126-25.   The autopsy revealed that Bernhardt was struck with three gunshots that each entered his front and exited his back.   8/25/17 Autopsy Report at 1.   One gunshot hit Bernhardt's chest, one struck his right hip, and the third impacted his right second toe.   *Id.*   It was not possible to determine which shots were fired first.   Decl. of Lindsey Harle at ¶ 8, Dkt. No. 126-35. However, at the moment Bernhardt was shot in the chest, he was directly facing

---

[6]In her opposition statement of facts, Plaintiff disputes Grantz's assertion that he felt his life was in peril by, again, citing no evidence.   *See* Dkt. No. 134 at 1.   The Court, therefore, does not consider Grantz's statements in this regard as properly disputed.

[7]After the shooting, Kaina said to Grantz: "I'm sorry Lieutenant. That fuckin bow was cocked. I saw it from the beginning, brah."   Opp. Statement of Facts at 3; Reply Statement of Facts at ¶ 82.

Kaina, and he had slightly turned past Kaina when he was shot in the right hip.[8]

4/22/19 Report of Dr. Kris Sperry at 6, Dkt. No. 134-23.[9]

## DISCUSSION

The Court addresses each of Plaintiff's remaining claims in turn, beginning with her assertion that Kaina violated Bernhardt's Fourth Amendment right against unreasonable seizures.

## 1.   Claim 1: Fourth Amendment

The Supreme Court has explained that "all claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard…."   *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted).   The "reasonableness" standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."   *Id.* at 396 (quotation and internal quotation omitted).   When deadly force is used, the sole issue is whether the government's interests are sufficient to justify such force.   *Vos v. City of Newport Beach*, 892 F.3d 1024, 1031 (9th Cir. 2018).

---

[8]Though in the vicinity, Officer Pacheco did not witness Bernhardt's final encounter with Grantz and Kaina because Pacheco had turned away to investigate a noise in the nearby bushes.   *See* Pacheco Decl. at ¶ 5.

[9]In her opposition statement of facts, Plaintiff argues that, "[t]he gunshot trajectories are not consistent with Kaina's account."   Dkt. No. 134 at 5.   The evidence cited, however, does not support that argument.

This inquiry necessitates "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.   The most important factor is whether a suspect poses an immediate threat to the safety of officers or others.   *Vos*, 892 F.3d at 1032.   Because the reasonableness inquiry is an objective one, *Graham*, 490 U.S. at 397, there must be "objective factors" justifying an officer's concern for his or others' safety, *Vos*, 892 F.3d at 1032.

Here, the undisputed evidence shows that there were numerous objective factors justifying Kaina's use of deadly force.   First, the undisputed evidence establishes that Bernhardt pointed a deadly weapon–the loaded hunting crossbow–at Grantz.   As noted earlier, Plaintiff points to no evidence in the record contradicting Grantz and Kaina's declarations that the crossbow was pointed at Grantz.   *See supra* nn. 4-5.   Instead, Plaintiff relies on Grantz supposedly not feeling in danger by Bernhardt's actions–something which *Grantz* himself contradicts and for which Plaintiff offers no support.   As such, Kaina's use of deadly force was reasonable. *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ("When an individual points his

gun in the officers' direction, the Constitution undoubtedly entitles the officer to respond with deadly force.") (quotation and citation omitted).[10]

Second, although Bernhardt pointing a deadly weapon at Grantz is the most important objective factor supporting the use of force, with nothing more needed, there were several other considerations justifying the officers' actions.   For example, *after* Bernhardt made his statement about feeding his animals and in the *immediate* moments before the deadly shooting, he directly threatened Grantz, telling Grantz that he was "in danger" where he was standing.   Further, Bernhardt was agitated and aggressive at the time, he had walked quickly toward the crossbow, and made a quick turn toward Grantz while holding the same.   These facts also support Kaina's use of deadly force.   *See George*, 736 F.3d at 838 ("If the person is armed−or reasonably suspected of being armed−a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat.").

Plaintiff's arguments to the contrary are unavailing.   Plaintiff first argues that Kaina had time to warn Bernhardt, presumably to relinquish the crossbow.   The audio recording and Grantz's and Kaina's uncontradicted declarations establish, however, that there were scant seconds between Bernhardt picking up the crossbow and pointing it at Grantz.   As for a pre-threat, pre-pick-up warning, Plaintiff offers

---

[10]The parties' dispute over Kaina's testimony, that Bernhardt's finger moved toward the trigger of the crossbow, *see* Dkt. No. 134 at 3, Dkt. No. 139 at ¶¶ 88-89, is, thus, irrelevant, given that the evidence establishes Bernhardt pointed the crossbow at Grantz.

no evidence or argument why such a warning was necessary or even an appropriate course of action.   Bernhardt had to that point repeatedly refused to remove his belongings from the public roadway and had repeatedly swore at the officers.   But he was not (yet) armed and had not (yet) threatened them.

Plaintiff also argues that Pacheco (and, again, Grantz) did not feel in danger or unsnap their gun holsters the way Kaina did.   The Court has already addressed Grantz's supposed feelings with respect to Bernhardt's actions, but adds further that Grantz has explained (without contradiction) that he did not unsnap his holster, not through a lack of trying, but because he simply did not have time to do so.   As for Pacheco, the evidence reflects there is a reason why he did not unsnap his holster or believe Bernhardt was a danger: he was investigating noises in a nearby bush when Bernhardt's encounter with Grantz and Kaina occurred.

Plaintiff further argues that Bernhardt was simply picking up his personal belongings "to go tend to his animals…."   Dkt. No. 135 at 8.   As the Court noted earlier and has discussed in this section, there is no factual evidence to support that assertion in the record.   *See supra* n. 5.[11]   Next, Plaintiff argues that her police procedures expert, Scott DeFoe, opined that Kaina's conduct represented an unnecessary use of lethal force.   However, Plaintiff cannot avoid "summary judgment by simply producing an expert's report that an officer's conduct leading

---

[11]Indeed, as specifically mentioned, Plaintiff provides no explanation for why a crossbow or iPad would indicate Bernhardt intended to feed animals, given that neither can be used for that purpose.

up to a deadly confrontation was imprudent, inappropriate, or even reckless. Rather, the court must decide as a matter of law whether a reasonable officer could have believed that his conduct was justified." *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002) (quotation omitted), *overruled on other grounds by Cty. of Los Angeles v. Mendez*, 137 S.Ct. 1539 (2017).   In light of the discussion above, this Court finds that a reasonable officer would have believed that Kaina's conduct was justified under the circumstances with which he was presented on April 29, 2017.[12]

Even if Kaina's conduct could not be considered reasonable, however, he has also raised the defense of qualified immunity.   Dkt. No. 125-1 at 18-21. Succinctly, qualified immunity protects officials who do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation and internal quotation omitted).   "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id*. (quotation omitted).   Here, Defendants point to *George* and other Ninth Circuit cases that establish, rather than *violating* a clearly established right, Kaina's actions were *consistent* with clearly established law in shooting Bernhardt after he pointed a weapon at Grantz.   Dkt. No. 125-1 at 20-21.   The Court agrees.   In

---

[12]Plaintiff also argues that Dr. Sperry has opined that Kaina's firearm was drawn "well before" Bernhardt moved toward the crossbow.   Dkt. No. 135 at 9.   As noted earlier, though, Dr. Sperry did not stand by that opinion during his deposition.   *See supra* n. 3.

response, Plaintiff argues, without citing a single case in support, that "[t]he law governing Kaina's conduct is clearly established."   Dkt. No. 135 at 12.   While the Court agrees that the law is clearly established, here, that only means that Kaina did not violate the same.   Therefore, the Court finds that Kaina is also entitled to qualified immunity with respect to any purported Fourth Amendment violation.

## 2.   <u>Claims 1 & 2: Fourteenth Amendment</u>[13]

The parties agree that, in the Ninth Circuit, family members have a Fourteenth Amendment due process interest in companionship and society with each other that is violated when a law enforcement officer's conduct "shocks the conscience." Dkt. No. 125-1 at 17; Dkt. No. 135 at 10.   "Conscience-shocking actions are those taken with (1) deliberate indifference or (2) a purpose to harm unrelated to legitimate law enforcement objectives."   *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) (quotations and ellipsis omitted).

Here, Plaintiff appears to only rely upon the latter category of conscience-shocking actions.   *See* Dkt. No. 135 at 10-11.   In any event, in light of the undisputed facts discussed above, Kaina's conduct was not conscience-shocking under any definition.   As discussed, Kaina shot Bernhardt after Bernhardt had

---

[13]In the Complaint, both Claims 1 and 2 rely upon the Fourteenth Amendment.   Dkt. No. 1 at 21-22.   In her opposition to the motion for summary judgment, though, Plaintiff only discusses the Fourteenth Amendment in relation to Claim 2.   Dkt. No. 135 at 6, 9.   In this light, because it does not appear that any Fourteenth Amendment claim is distinct as between Claims 1 and 2, the Court discusses the issue as one herein.

threatened Grantz, moved quickly toward a loaded crossbow, turned quickly toward Grantz, and then pointed the crossbow at Grantz.   There is simply nothing that shocks the conscience about Kaina's conduct in response to this.[14]   Therefore, Defendants are entitled to summary judgment with respect to Plaintiff's Fourteenth Amendment claim.[15]

### 3.   <u>Claim 3: Failure to Train</u>

Pursuant to *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658 (1978), a municipality can be liable under 42 U.S.C. Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."   *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Here, in one short and unsupported paragraph, Plaintiff asserts that Kaina, Grantz, and Pacheco's conduct demonstrates a lack of adequate training and the failure to train "is a policy."   Dkt. No. 135 at 14.   The record, however, shows that officers for the County receive training on the use of deadly force, the Americans

---

[14]Instead of dealing with the facts of this case, Plaintiff, in response, describes an unsupported fantasy regarding Kaina's actions and intentions in shooting Bernhardt.   For example, Plaintiff asserts that Kaina "concealed information to his advantage[,]" "waited for Bernhardt to pick up the crossbow[,]" "knew that Bernhardt would retrieve" the crossbow, had "his gun already drawn and ready," and committed an "execution by ambush…."   Dkt. No. 135 at 10-11.   This hyperbole borders on the frivolous.

[15]In addition, Defendants would be entitled to qualified immunity with respect to this claim, given that there is no clearly established law that, under the circumstances here, Kaina's conduct shocks the conscience.   *See A.D.*, 712 F.3d at 453-454 (applying the qualified immunity standard to a Fourteenth Amendment due process claim).

With Disabilities Act, and how to interact with mentally ill persons.   Decl. of Paul K. Ferreira at ¶¶ 3-5.   Moreover, *Plaintiff* acknowledges this as undisputed. *Compare* Dkt. No. 126 at ¶ 67, *with* Dkt. No. 134 at 1.   As such, there is no basis in the record to find a failure to train here, let alone *deliberate indifference*. Therefore, Defendants are entitled to summary judgment with respect to Claim 3.[16]

### 4.   <u>Claim 4: Americans With Disabilities Act (ADA)</u>

The parties agree that, in the Ninth Circuit, Title II of the ADA supplies two claims applicable to arrests: (1) wrongful arrest; and (2) "reasonable accommodation," where police "fail to reasonably accommodate [a] person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees."   Dkt. No. 125-1 at 26; Dkt. No. 135 at 15.

Here, Plaintiff argues only that Kaina and Grantz failed to "accommodate" Bernhardt.   Dkt. No. 135 at 16.   Plaintiff asserts that Kaina and Grantz should have "invoked MH-1" and taken Bernhardt into protective custody.   Plaintiff also asserts that a crisis negotiator or mental health crisis worker should have been called.   *Id.* As with many of Plaintiff's arguments, though, she cites not a single piece of evidence demonstrating that any of these purported accommodations were available

---

[16]In addition, as Defendants assert, when no constitutional violation occurs, as is the case here, a municipality cannot be held liable for the use of deadly force.   *See* Dkt. No. 125-1 at 23 (citing *Long v. City & Cty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007)).

to Kaina and Grantz. *See id*.[17]   In addition, prior to Bernhardt picking up the

crossbow, at which point the evidence establishes it was too late to invoke or call-in

any purported accommodations, Plaintiff provides no evidence that resorting to the

stated accommodations would have been appropriate under the circumstances Kaina

and Grantz faced.[18]   As a result, the Court finds that Plaintiff has failed to show the

availability of a reasonable accommodation or that one should have been deployed

under the circumstances, and, thus, Defendants are entitled to summary judgment as

to Claim 4.   *See Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1233 (9th

Cir. 2014) (explaining that "the plaintiff bears the initial burden of producing

evidence of the existence of a reasonable accommodation."), *rev'd in part on other

grounds by City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015).

---

[17]In her opposition statement of facts, Plaintiff cites testimony from Pacheco for the contention that "MH-1" should have been invoked.   Dkt. No. 134 at 4.   The cited testimony does not, however, support any such contention.   *See* Depo. of James Pacheco at 46:19-51:14.   As for a crisis negotiator or mental health worker, Plaintiff cites Dr. Sperry's report.   Dkt. No. 134 at 5.   However, although Dr. Sperry does state that Grantz could have called such an individual, Dkt. No. 134-23 at 7, Dr. Sperry does not explain why he believed this option was available to Grantz—there is certainly no evidence in the record suggesting it was.   Also, Dr. Sperry's belief as to the need to call a crisis negotiator or mental health worker goes beyond his stated expertise of forensic pathology.   *See* Depo. of Dr. Kris Lee Sperry at 57:11-13, 22-25, 58:1 (acknowledging lack of expertise in "police standards").   Therefore, the Court does not find any evidence to support these statements from Plaintiff.

[18]In that regard, Plaintiff's police procedures expert, Scott DeFoe, acknowledged, during his deposition, that Grantz was "doing a good job" and tried to "bring a proper resolution to the situation…."   Depo. of Scott Allen DeFoe at 62:20-24, 66:20-22, Dkt. No. 139-4.

**5.     Claims 5 & 9: Wrongful Death and Intentional Infliction of Emotional Distress**

Plaintiff's remaining claims rely upon State tort law.   Defendants argue that they are entitled to summary judgment for at least two reasons.   Dkt. No. 125-1 at 28-29.   First, they argue that, because the force used was reasonable, the same cannot be the basis for a State tort claim. Second, they argue that Kaina is entitled to qualified immunity, which, under State law, requires a showing of malice for an action to lie with respect to Kaina's actions−something that Defendants argue does not exist here.   In one, short sentence in response, Plaintiff appears to only contend that Kaina acted with malice, citing earlier arguments in her brief.   Dkt. No. 135 at 17.   The Court agrees with Defendants.   Contrary to Plaintiff's suggestion, there is no evidence, let alone "clear and convincing evidence[,]" that Kaina acted with malice toward Bernhardt.[19]   Rather, the undisputed evidence reflects that Kaina was motivated by the desire to protect Grantz.   Therefore, Defendants are entitled to summary judgment with respect to both Claims 5 and 9.[20]

---

[19]Plaintiff's citation to previous arguments in her brief also provides no help, not the least because the cited arguments also fail to cite any evidence for the contention that Kaina acted with malice.

[20]The Court also agrees that no evidence in the record indicates that Kaina acted wrongfully or outrageously toward Bernhardt.   *See* Dkt. No. 125-1 at 28 & nn. 29-30; *see also Long*, 511 F.3d at 908 (affirming the dismissal of a claim for intentional infliction of emotional distress because an officer's behavior could not be outrageous when he acted with objective reasonableness).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment, Dkt. No. 125.   The Clerk is instructed to enter Judgment in favor of Defendants and then CLOSE this case.

IT IS SO ORDERED.

DATED: May 13, 2021 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge